IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TRINITY INDUSTRIES, INC. and TRINITY HIGHWAY PRODUCTS, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | **Civil Action No. _____** |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| JOSHUA HARMAN, | ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiffs Trinity Industries, Inc. and Trinity Highway Products, LLC

(collectively, "Trinity") for their Complaint against Defendant Joshua Harman

("Harman") state as follows:

## SUMMARY OF THE CASE

1.      This is an action for injunctive relief and damages against Harman.

Harman has published false and malicious statements about the safety of highway

end terminal products manufactured by Trinity, with the intent to defame and

disparage Trinity's products and commercial reputation, interfere with its present

and future business relations, and incite claims or litigation against Trinity by others.

2.      While Harman claims to be on a crusade to "save lives," in reality he is motivated by self-interest and what he expects to be a financial windfall. Harman is an owner and officer of Selco Construction Services, Inc. ("Selco"), a Virginia company that subcontracted with various prime contractors throughout the eastern United States to install roadside hardware.

3.      Harman set up a new company (SPIG Industry, Inc. and SPIG Industry, LLC, or collectively, "SPIG") and built a manufacturing facility to produce an end terminal that was virtually identical to Trinity's ET-Plus.  When it was discovered that Harman had copied Trinity's ET-Plus, Harman elected to disparage Trinity and its product – the same product he copied.

4.      Photographs depicting Trinity's ET-Plus and SPIG's copy of the ET-Plus are shown below:

                              

(*Trinity's ET-Plus*)                        (*SPIG's product*)

5.      When Trinity sued Selco and SPIG for patent and trademark infringement, Harman lashed out and began a campaign to disparage Trinity and spread misinformation about the performance of the ET-Plus.

6.      Using the media and the Internet, among other things, he has disparaged Trinity and its products.  Harman personally operates and maintains Internet websites and a social media page to defame and otherwise injure Trinity's guardrail system and end terminal brands, reputation, and business interests. Harman has also published defamatory statements against Trinity through in-person meetings and electronic mail messages directed to various individuals and entities, including members of the media and Federal and State highway authorities.

7.      For example, Harman has made false and derogatory statements about the safety of Trinity's guardrail end terminal products to the Atlanta, Georgia office of the United States Department of Transportation's Federal Highway Administration (FHWA).

8.      Further, Harman has recently contacted reporters for the FOX 5 television station in Atlanta, Georgia in an effort to get them interested in his campaign of misinformation and to broadcast his defamatory statements on their

news programs.  He is also attempting to enlist others, individually or through a

purported class action, to assert legal claims against Trinity.

9.      Harman did not do any crash tests or computer simulations before

publishing his accusations about Trinity's products.  Harman is not an engineer or

a scientist.  He has no specialized expertise or training in physics or metallurgy.

This action arises under statutory and common law of the State of Georgia and the

United States that prohibits such conduct.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000

and the parties are citizens of different states.  Plaintiffs Trinity Industries, Inc.

and Trinity Highway Products, LLC are each citizens of both Delaware and Texas.

Defendant Harman is a citizen of the Commonwealth of Virginia.

11.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391

because many of the acts that are the subject of this Complaint occurred in the

Northern District of Georgia.

## THE PARTIES

12.    Plaintiff Trinity Industries, Inc. ("Trinity Industries") is a corporation organized and existing under the laws of the State of Delaware and with its principal place of business at 2525 Stemmons Freeway, Dallas, Texas 75207.  It is a citizen of Delaware and Texas for purposes of diversity jurisdiction.

13.    Trinity Highway Products, LLC ("Trinity Highway") is a limited liability company with its principal place of business at 2525 Stemmons Freeway, Dallas, Texas 75207.  Trinity Highway is wholly-owned by Trinity Industries and Trinity Industries is its sole member.  Thus, it is a citizen of Delaware and Texas for purposes of diversity jurisdiction.  Trinity Highway sells its products in the Northern District of Georgia, throughout the United States, and internationally. Specifically, Trinity Highway manufactures and sells guardrail end terminal products known as the "ET-Plus."  Trinity Highway previously manufactured and sold an end terminal product called the "ET-2000."

14.    Trinity Industries and Trinity Highway shall be referred to collectively herein as "Trinity."

15.    Defendant Harman is a citizen of, and resides in, the Commonwealth of Virginia.

16.     Harman is an officer or owner of various Virginia companies, at least two of which are engaged in road contracting and highway product manufacturing. Specifically, Harman is an owner and officer of SPIG Industry, Inc. and SPIG Industry, LLC (collectively, "SPIG") and Selco Construction Services, Inc. ("Selco").  SPIG manufactures and Selco installs highway guardrail systems.

## FACTUAL BACKGROUND

17.     Trinity manufactures highway hardware products, including guardrail systems and end terminals, specified for use on the national highway system by the appropriate highway authorities throughout the United States.

18.     Trinity enjoys an international reputation for excellence in the highway products industry.  Trinity has earned and maintained brand recognition, goodwill, and a positive reputation in the community of roadside highway hardware purchasers, suppliers and manufacturers.  This community includes federal and state highway authorities, as well as commercial customers and road contractors.

19.     Where applicable, Trinity's products have been crash tested to specific criteria adopted by the FHWA.  Trinity's brands, goodwill and reputation are based almost entirely upon the proven and federally accepted "crashworthiness" (an FHWA term) of its products.

20.     Trinity derives a substantial portion of its revenues through the sale of its guardrail systems and end terminal products.  Among Trinity's products is the ET-Plus guardrail end terminal system ("ET-Plus").

21.     The ET-Plus, in conjunction with the rest of the guardrail system, is specifically designed to dissipate the energy of an errant vehicle that impacts the end of a guardrail.  The ET-Plus system contains a specific component part that dissipates energy by extruding guardrail in an end-on impact.  That component is called an "extruder head" or simply "head" in the industry vernacular.

22.     The ET-Plus employs patented technology developed by Texas A&M, an institution of higher learning that has a national reputation for academic excellence and integrity.  Texas A&M enjoys a particularly strong reputation for excellence in the area of research and development related to highway products. Texas A&M has assigned and granted exclusive licenses to several of its patents to Trinity, which patented technology is used in the manufacturing of Trinity's guardrail systems and end terminals, including the ET-Plus.

23.     The ET-Plus has been crash-tested by a certified testing facility and has been accepted continually by the FHWA for use on U.S. highways since January 2000.   The ET-Plus has been deemed crashworthy pursuant to the National Cooperative Highway Research Program Report 350 test criteria

("NCHRP 350") since 2000.  The FHWA signified its acceptance of the ET-Plus for these purposes by letters to Trinity in January 2000 and September 2005.

24.     The FHWA has found the ET-Plus to be eligible for reimbursement using federal highway funds since 2000.  Most recently, in October 2012, the FHWA reiterated that the ET-Plus is eligible for federal reimbursement.

25.     Between 2003 and 2005, Trinity, in consultation with Texas A&M's Texas Transportation Institute ("TTI"), considered whether the guide channels at the top and bottom of the ET-Plus feeder chute in the extruder head might be changed from a 5-inch to a 4-inch channel.  Trinity Highway discussed this with the TTI designers prior to any change in the manufacturing process.  Trinity believed that a 4-inch channel width would permit a stronger weld joint at the junction of the guide channel of the feeder chute.  TTI agreed with this and further determined that the 4-inch guide channel would enhance the product's performance by improving the alignment of the extruder head on the W-beam rail.

26.     In May 2005, before any sales of the ET-Plus containing an extruder head with 4-inch rail guides occurred, Trinity and TTI crash tested a 31-inch high rail configuration with the ET-Plus containing 4-inch rail guide channels.  These crash tests were performed using NCHRP 350 criteria impacts.

27.     In July 2005, TTI conducted end-on crash tests within the TL-2 and TL-3 criteria of NCHRP 350, which demonstrate that the rail and rail splices smoothly feed through the ET-Plus extruder head with the 4-inch guide channel. Furthermore, inspections of in-field impacts reveal unimpeded extrusion of rail when impacted end-on within NCHRP 350 criteria.

28.     The ET-Plus also has a gating function in its design.  If an ET-Plus is impacted end-on, at an angle, some extrusion will occur as the impacting vehicle "gates" through the system.  The extruder head and rail are bent away from the path of the vehicle as part of the process designed into the system.  This is a tested, NCHRP 350 verified, function of the system, which is expected and accepted by FHWA.

29.     The FHWA accepted these tests and continued to accept the ET-Plus for use on federal highways.  The September 2, 2005 FHWA acceptance letter for this testing may be viewed at

http://safety.fhwa.dot.gov/roadway_dept/policy_guide/road_hardware/barriers/pdf/cc94.pdf.

## HARMAN'S COMPANIES COPIED, MANUFACTURED AND INSTALLED COPIES OF THE ET-PLUS WITH THE FOUR-INCH GUIDE CHANNEL

30.     During February 2011, Trinity learned that SPIG was manufacturing guardrail end terminal systems that substantially infringed upon the patented ET-Plus system.  Trinity also learned that Harman's other company, Selco, was representing to the Virginia Department of Transportation ("VDOT") that it was installing Trinity's ET-Plus product on state highways, when in fact, Selco was installing the infringing guardrail end terminal devices produced by SPIG.

31.     Selco installed nearly 300 of SPIG's end terminals on Virginia roadways.

32.     Harman has admitted that SPIG attempted to make an exact copy of Trinity's ET-Plus for use in Virginia.

33.     SPIG's end terminals installed in Virginia were not authorized or licensed by Trinity or Texas A&M.

34.     SPIG's end terminals installed in Virginia were not crash tested or accepted by the FHWA as a product that may be installed on the National Highway System.

35.     SPIG's end terminals installed in Virginia included a four-inch guide channel (inappropriately called the "rail feeder chute" by Harman).

10

36.   Photographs of SPIG's end terminal with a four-inch guide channel, as installed in Virginia, are depicted below:





37.   VDOT required Selco to remove all of the SPIG end terminal systems from Virginia's roadways.  VDOT also removed Selco and SPIG from the approved vendor lists in Virginia.

38.   On information and belief, Harman and his companies (SPIG and Selco) are currently under investigation by the U.S. Department of Transportation and VDOT regarding the sales and installation of SPIG's end terminals by Selco. On further information and belief, the United States Attorney for the Western District of Virginia has convened a grand jury for this purpose.  Harman has produced documents and testified to the grand jury.

## THE PATENT LITIGATION

39.    In September 2011, Trinity and Texas A&M sued Harman's companies, SPIG and Selco, in the Eastern District of Virginia for patent and trademark infringement (the "Patent Litigation") seeking injunctive relief and damages.

40.    During the course of the Patent Litigation, SPIG and Selco's attorneys engaged in discovery not for purposes of defense in the Patent Litigation, but instead to stockpile information Harman would later use in pursuit of a crusade to harm Trinity's brands, business and commercial reputation, and to solicit product liability claims against Trinity through a purported class action.

41.    Harman claims to be an "inventor" of the SGET.  Harman also claims the SGET is modeled after Trinity's ET-Plus and ET-2000 products.

42.    The Patent Litigation was settled by the parties in October 2012.

43.    Harman continues to use and misrepresent information that he learned during the course of the Patent Litigation to disparage the ET-Plus and Trinity in an attempt to solicit claims against Trinity and to gain a business advantage for himself and his SGET product.

## HARMAN'S NEW END TERMINAL SYSTEM

44.     In late 2011, Harman and a patent agent named Donald Monin (who was then employed by SPIG and Selco's first set of lawyers in the Patent Litigation) submitted "designs" for the SGET to the FHWA and sought approval for the product to be installed on the national highway system.

45.     On information and belief, Harman has not crash tested his SGET pursuant to any applicable federal criteria.  Harman has asserted that the SGET is so similar to Trinity's tested and accepted ET-Plus and ET-2000 that it should not have to undergo crash testing under the current federal government standards.

46.     On information and belief, Harman continues to seek acceptance of the SGET as an alternative to other end terminal systems currently available, such as the ET-Plus, from federal and state highway authorities.

## HARMAN'S THREATS AGAINST TRINITY

47.     Harman was not personally a party to the Patent Litigation, but he participated in meetings and attended proceedings in that case ostensibly in his capacity as an officer and owner of SPIG and Selco.  He sat in on many of the dozens of depositions taken in that case and attended a majority of the discovery hearings before the Virginia court.

48.     On January 24, 2012, certain executives and legal counsel of Trinity agreed to meet with legal counsel for SPIG and Selco.  However, the lead SPIG and Selco attorneys who arranged for that meeting did not attend.  Instead, only Mr. Monin, the above-referenced patent agent, along with a junior associate (Ben Maskell), appeared.  Harman attended the meeting, as well, and did virtually all of the talking for his group.

49.     Rather than engage in a constructive dialogue to resolve the parties' dispute, Harman proceeded to disparage and threaten Trinity and Texas A&M.

50.     Harman asserted that Trinity and Texas A&M had "altered the design" of the ET-Plus and that with the new specifications, the product is "dangerous" and is "killing people."  Asked for the basis for his claims, he stated that his claims are "supported by math."

51.     Harman threatened to make publications against Trinity and Texas A&M and stated that when he was done, they were going to owe him "millions of dollars."

52.     Harman threatened to post these, and other untrue and defamatory assertions against Trinity and Texas A&M, on his Internet website located at www.failingheads.com.

53.     Harman threatened to contact the FHWA with these same baseless allegations.  In fact, Harman had already contacted (and continues to contact) several employees of the FHWA to articulate his baseless and inflammatory allegations.

54.     Since that time, Harman has engaged in a campaign to defame Trinity and its end terminal products for the specific purpose of reducing Trinity's sales of the ET-Plus, and prompting an "unapproval" of  existing ET-Plus installations throughout the United States, including the State of Georgia.  Harman has knowingly published a series of falsehoods about the ET-Plus product, its safety testing, and its performance through various media.  He has recruited others to assist with further disseminating this misinformation.

### HARMAN'S "FAILING HEADS" WEBSITE

55.     On January 16, 2012, Harman registered www.failingheads.com (the "Website") under the fake name "Mark German."

56.     Harman created and maintains the Website for the malicious purpose of disparaging Trinity and the ET-Plus, thus carrying out his threats.

57.     The primary content of the Website is accessible to the general public, worldwide, without obtaining a user name and password from Harman.

58.     The Website contains numerous defamatory, false and misleading

statements specifically intended to disparage and interfere with Trinity's business

and to invite claims against Trinity.

## JANUARY 2012 VERSION OF THE WEBSITE

59.     The January 2012 version of the Website states that the ET-Plus

products are "deadly" and that the ET-Plus has been conclusively proven to be

"dangerous."  It further insinuates that the purported dangers of these products are

a result of cost-cutting measures by Trinity.

60.     The Website's "History" page states:

> The current (fourth) and most common generation End
> Terminal frequently fails22 and becomes a serious safety
> hazard rather than a safety device.  THIS IS THE
> FATAL HEAD !!!!!

Such statements are untrue, unsubstantiated, malicious and published with intent

to damage Trinity's brands, reputations and businesses.

61.     The Website depicts photographs purporting to show "failures" of

Trinity's product and implying that people were injured or killed by Trinity's

product.

62.     Each page of the January 2012 Website states that its purpose is "[t]o

connect individuals for a class action lawsuit."

63.     The January 2012 Website contains the following false or misleading statements regarding the ET-Plus product, and specifically includes photographs labeled as the ET-Plus:

        (a)     ET-Plus heads are killing people;

        (b)     ET-Plus heads are failing "completely";

        (c)     "people are perishing because of" the ET-Plus;

        (d)     unauthorized design or manufacturing changes were made to the ET-Plus;

        (e)     design changes were made to save money at the expense of public safety;

        (f)     the ET-Plus "chokes" and "fails";

        (g)     the ET-Plus frequently fails and becomes a serious safety hazard rather than a safety device, e.g., "THIS IS THE FATAL HEAD !!!!!";

        (h)     the ET-Plus killed a "mother of a 12 yr old son" because the guardrail impact head failed completely; and

        (i)     the ET-Plus will fail on impact "based upon physical measurements of the actual terminal."

64.     Harman is the author of the text and photographs on the Website.  He personally provided its content.

65.     Harman's purpose in creating and maintaining the January 2012 Website is to disseminate false and misleading information to damage Trinity's brands, business, and commercial reputation, to interfere with Trinity's current and future business relations, and to gather actual or potential claimants for a "class action" or other litigation based on bodily injury or wrongful death.

66.     Harman intends to financially benefit from the Website by inviting injured persons to file frivolous personal injury and product liability lawsuits against Trinity.

67.     Harman intends to gain from the litigation by acting as a "consultant" to plaintiffs and their attorneys.  Indeed, he is already working as a litigation consultant for at least one attorney who has filed personal injury claims against Trinity and Texas A&M.

68.     Harman intends to damage, and has damaged, Trinity's brands, business, and commercial reputation with federal, state and international highway authorities and their contractors (Trinity's customers) by publishing these false and defamatory allegations.

69.     The Website is accessible to Georgia residents, and invites them to exchange information with the Website operators in order to join this enterprise, as well as to receive access to restricted content on the Website.

70.    The restricted content on the Website includes a PowerPoint presentation titled "Failure Assessment of Guardrail Extruder Terminals" (the "Presentation").  Harman is the author of the Presentation.  The Presentation contains additional false and defamatory statements about Trinity and its products.

71.    The Presentation purports to contain an "assessment" of the performance of Trinity's ET-Plus, but instead it contains additional misleading and false information and photographs.

## SPRING 2012 VERSION OF THE WEBSITE

72.    Harman frequently updates the Website with new photographs and narrative.

73.    As of March 15, 2012, Harman claimed that the Website had been "sanitized" to remove express references to Trinity and Texas A&M.  In reality, Harman simply removed the explicit "ET-Plus" and "killing" references from the January 2012 Website, choosing different words that are nevertheless harmful to Trinity.  For example, instead of using the word "killed" in the caption of a photo of an impacted ET-Plus, Harman's updated Website said that a crash victim "perished" after impacting the guardrail head.  *See* http://www.failingheads.com/about/about.htm (visited May 10, 2012).  To anyone in the highway products industry – or a personal injury attorney focusing on such

issues – the product depicted on the Website's "Photo Gallery" is clearly identifiable as an ET-Plus. *See* http://www.failingheads.com/photo_gallery/photo_gallery.htm (visited May 10, 2012) (purported to be photographs from seven states that represent "failing" end terminals).

74.    In addition, Harman's Website continued to "link" to numerous other sites and publications for the express purpose of identifying Trinity and the ET-Plus product.

## JANUARY 2013 VERSION OF THE WEBSITE

75.    As of January 2013, the stated purpose of the Website is: "to connect individuals for the purpose of compiling an accident data base and to promote highway safety."

76.    The Website home page contains a bold, blinking link to "Four Inch Fatality and Injury Video and Articles."  At the bottom of the home page, it states "It could be you or your Family."

77.    The Website references to "Four Inch Fatality and Injury Video and Articles" (www.failingheads.com/news/publicnews.htm) are false and misleading.

78.     Harman continues to maliciously assert that Trinity is killing people with the ET-Plus, stating: "People are perishing because of this. This website is to stop it. It could be one of your family members."

79.     On the Website, Harman refers to the ET-Plus and various automobile accidents with false and misleading statements.  Examples include:

(a) "Woman loses leg to a four inch impact head."  There is no truth to the allegation that this woman's injuries were caused by the four-inch channel in the ET-Plus.  In fact, the police report for the referenced accident shows that the vehicle impacted the guardrail sideways during a snow storm at excessive speed.

(b) "Florida man is impaled by guardrail."  In fact, the end terminal system at issue in the Florida accident contained a mix and match set of guardrail elements improperly assembled by a Florida Department of Transportation crew composed of untrained prisoners from the Florida Department of Corrections.  Harman knows that the statement on his Website is false because he has personally inspected the guardrail remnants and personally serves as a litigation consultant to counsel for the plaintiffs in that case.

(c) "Firefighter looses [sic] life to a four inch impact head."  In fact, the firefighter was reportedly intoxicated while driving and died after impacting a billboard pole (not an end terminal) with such force that the frame of his truck bent at ninety degrees.  The highway patrolman's report, which is publicly available, includes a finding by the investigating officer indicating that the intoxicated driver first struck "a guardrail" (not a guardrail end terminal extruder head), then struck a road sign, and finally struck the billboard pole with the catastrophic force that caused his death.  Yet Harman ignored the truth, fabricated an entirely different story in order to disparage Trinity, then published it.

(d) "Emergency personnel is impaled by guardrail."  In fact, the preliminary investigation of this accident reveals that the person impacted a guardrail end terminal system that had previously been hit, was not repaired, and was not in an accepted condition of installation. Again, Harman knows that the statement on his Website is false because he allegedly has inspected the accident site and the guardrail remnants.

22

80.    Harman has no basis in science or fact for publishing any of these allegations.

81.    The Website's answers to "frequently asked questions" about the "four inch" ET-Plus amount to nothing more than junk science.  *See* http://www.failingheads.com/faq/faq.htm.

82.    In particular, it is false and defamatory for Harman to state that:

the "Four inch Feeder Channel" and the "shortening of the Extruder Chamber vertically . . . cause[s] the deformation of the W-beam [guardrail] to restrict on the lower and upper Feeder Channels at the entrance of the Chamber. . . . When this happens it creates a dead man's block, this is why through maintenance it is more common not to be able to reuse the 4" extruder head due to Throat Lock (The W-Beam will not go Forward or Reverse inside the Head).

83.    These allegations are based on no scientific analysis and are not founded in any principles of engineering or physics.  Once again, Harman maintains that he created the text and diagrams of the Presentation, which was then reviewed by his Patent Litigation counsel during the course of litigation with Trinity, and he had no other expert assistance in developing the Presentation.

**HARMAN HAS CREATED (AND LINKED TO) A SECOND WEBSITE FEATURING PHOTOGRAPHS PURPORTING TO SHOW ET-PLUS FAILURES**

84.    In addition to spreading false and misleading information on the Website at www.failingheads.com, Harman has also created a *second* website to

further misinform the public.  The website at www.make-a-way.phrop.com is

described as a "25000 PIC PHOTO ALBUM" and "Massive Database [of]

Photos."  The January 2013 Website links to this second site (referred to herein as

"Photo Database").  *See*

http://www.failingheads.com/information_links/information_links.htm (visited

Jan. 18, 2013).

85.    A review of the "Album Tree" (index) of the Photo Database reveals

many of the same photographs featured at various times on the Failing Heads

Website.  The Photo Database also includes (without any redaction) the

trademarked "ET-Plus" name in the photo captions.  *See, e.g.,* http://www.make-a-

way.phrop.com/photo/315075/small (visited Jan. 15, 2013).

86.    The "Album Tree" also includes a set of photos identified as "New

Recent Photos Within The Last 30 Days."

87.    The Photo Database falsely represents pictures of "gated" terminals as

examples of extruder head "failures."  Gating is a tested, Report 350 verified,

function of the system, which is expected and accepted by FHWA.  These are not

examples of "failed heads," as Harman is falsely reporting.

## THE CURRENT PRESENTATION

88.     In the current version of the Presentation in the restricted content of the Website, Harman knowingly makes additional false, malicious and defamatory statements about other changes to the ET-Plus design, accompanied by photographs.

89.     For example, Harman falsely claims that Trinity reduced the "exit gap" in the ET-Plus head from a range of 1.35 to 1.6 inches, to a range of 1.1 to 1.5 inches.  He falsely states that the alleged reduction in the exit gap creates a "larger or longer dynamic compression plume."  Harman's Presentation falsely and maliciously represents that there is a changed – and deadly – "compression plume" resulting from the way the ET-Plus is manufactured.  Harman's statements about Trinity's product are pure fiction.  Trinity has never manufactured the ET-Plus with a tolerance other than 1 inch to 1 1/8 inches.

90.     Harman falsely and maliciously represents that Trinity changed the ET-Plus guide channel height from 15.375 to 14.875 inches which "can drastically affect performance," *i.e.*, "limits the expansion of the dynamic compression plume."  Once again, Harman claims deadly consequences without any scientific or engineering support for his false and defamatory statements about Trinity's ET-Plus.

91.     Harman falsely and maliciously represents that Trinity and Texas A&M changed the ET-Plus to insert the rails .75 inches into the extruder throat and this intrusion can "drastically impact performance" by causing "throat lock" during an impact.

92.     Harman also falsely and maliciously represents that w-beam guardrail splice bolts will not pass through the "changed" exit gap of the ET-Plus, also causing "throat lock."

**SOCIAL MEDIA AND EMAIL**

93.     In addition to his Failing Heads Website and the Photo Database, Harman uses social media to spread his false and misleading information about Trinity and its products.

94.     Harman established a Failing Heads Facebook page on which he attempts to connect with people to encourage them to assert claims against Trinity and Texas A&M.

95.     Harman also uses a fictitious name, Mark German, and a "failingheads.com" email address to publish false and misleading statements about Trinity and the ET-Plus.

## HARMAN'S FALSE AND MISLEADING STATEMENTS
## TO THE NEWS MEDIA, HIGHWAY AUTHORITIES
## AND TRAFFIC SAFETY SCIENTISTS

96.     Harman has repeatedly contacted reporters and media outlets, highway authorities and traffic safety scientists, falsely representing to them that the ET-Plus manufactured by Trinity since 2005 is not safe, is killing people, is "fatal," is subject to "throat lock," has not been tested pursuant to NCHRP 350 and is not approved by the FHWA.  All of these statements are demonstrably false.

97.     Among the governmental agencies contacted by Harman are: the FHWA in Atlanta, Georgia and Washington, DC; the Departments of Transportation in several states including Georgia, Florida, Tennessee, New Hampshire, California, Maine, Oklahoma, North Carolina, South Carolina, Mississippi, Louisiana, and Texas; and highway authorities in Australia and the United Kingdom.

98.     In October 2012, directly in response to Harman's repeated false statements to highway safety officials regarding the testing and approval status of the ET-Plus, the FHWA confirmed that "The Trinity ET-Plus end terminal with the 4-inch guide channels is eligible for reimbursement under the Federal-Aid Highway Program under FHWA letter CC-94 of September 2, 2005."

99.   Harman has recruited and is actively soliciting the news media to re-publish his false and misleading statements against Trinity.  Most recently Harman has contacted and provided false and misleading information about Trinity to reporters for the FOX 5 television station in Atlanta, Georgia in an effort to encourage a television broadcast of his false allegations.  Harman has also presented similar information to FOX network affiliates in Washington, D.C. and Dallas, Texas.  Upon information and belief he, or his agents, have prompted the media to make FOIA and open records requests to FHWA and Texas A&M.  The requests clearly parrot Harman's assertions about Trinity and the ET-Plus.

## COUNT I
## Libel

100.   Trinity re-alleges and incorporates by reference herein Paragraphs 1 through 99 above.

101.   Within the last year, Harman has personally made, and is responsible for, the publication of numerous false and derogatory written statements concerning Trinity and its  products, including but not limited to the contents of the Website, the statements published in the Presentation, and the statements spread through social media and email.

102.   Each of these statements was made with actual malice for the purpose of damaging Trinity's commercial reputation.

103.   These false and derogatory statements are not protected by any statutory, common law, or constitutional privilege.

104.   Harman published these statements knowing they were false, or with a reckless disregard for the truth.

105.   Harman's acts in disparaging Trinity's commercial reputation constitutes libel per se, thus Trinity is not required to prove it has suffered special damages.

106.   As a direct and proximate result of Harman's acts, Trinity has sustained, and will continue to sustain, damage to its brands, injury to its reputation in the industry, and loss of accumulated goodwill in an amount that will be established at trial, but not less than $75,000.

107.   Harman's conduct demonstrates willfullness, wantonness, malice, oppression, or an entire want of care raising a presumption of conscious indifference to the consequences of his actions, such that Trinity is also entitled to punitive damages in an amount sufficient to punish Harman for his actions and discourage similar future conduct on the part of Harman and others.

## COUNT II
## Slander

108.   Trinity re-alleges and incorporates by reference herein Paragraphs 1 through 107 above.

109.   Within the last year, Harman published false and derogatory oral statements concerning Trinity, its products and its business operations to the FHWA, various state departments of transportation and members of the media, including representatives of the Georgia Department of Transportation and news reporters for television station Fox 5 in Atlanta, Georgia, for the purpose of damaging Trinity's commercial reputation.

110.   Harman acted with malice towards Trinity and without privilege.

111.   Harman's conduct in publishing false and derogatory statements for the purpose of injuring Trinity's commercial reputation constitutes slander per se, and thus Trinity is not required to show it has suffered special damages.

112.   Harman's actions have caused and will continue to result in damage to Trinity's brands, reputation and goodwill with highway authorities, vendors, business partners and customers in an amount to be proven at trial, but not less than $75,000.

113.   Harman's conduct demonstrates willfulness, wantonness, malice, oppression, or an entire want of care raising a presumption of conscious indifference to the consequences of his actions, such that Trinity is also entitled to punitive damages in an amount sufficient to punish Harman for his actions and discourage similar future conduct on the part of Harman and others.

## COUNT III
## <u>Temporary and Permanent Injunctive Relief</u>

114.   Trinity re-alleges and incorporates by reference herein Paragraphs 1 through 113 above.

115.   For the reasons stated above, Trinity asserts a claim for preliminary and permanent injunctive relief to prevent the ongoing harm to Trinity's brands, business, reputation,  and goodwill.

116.   As shown from the facts above, unless Harman and his agents are preliminarily and permanently restrained from further dissemination of defamatory, false and misleading materials and information, Trinity will suffer immediate and irreparable injury.

117.   Harman should be subject to a preliminary and permanent injunction to halt his commission of on-going and future wrongs, prevent further irreparable harm to Trinity, and promote the interests of justice.

118.   Trinity does not have an adequate remedy at law.  Unless the injunctive relief requested herein is granted, it will suffer irreparable harm.

## PRAYER FOR RELIEF

Trinity therefore requests the Court to enter judgment in its favor and grant the following relief:

1.     Judgment in Trinity's favor on all counts of the Complaint;

2.     An award of special and compensatory damages in an amount to be determined at trial, against Defendant Harman and in favor of Trinity for the injury to its commercial reputation and business as a result of the disparaging and defamatory statements made by Harman;

3.     Punitive damages in an amount to be determined by the jury;

4.     An award of costs and attorneys' fees;

5.     An assessment of pre-judgment and post-judgment interest on the damages determined;

6.     Preliminary and permanent injunctive relief ordering Harman, his

agents, attorneys, servants, employees, and other persons in active concert or

participation with him, including the officers, directors, and employees of SPIG

and Selco, to:

> (A)    Cease directly or indirectly publishing the defamatory
>
> statements contained on the Failing Heads Website, Facebook page,
>
> and Photo Database and/or inviting or inciting others to republish the
>
> defamatory statements;
>
> (B)    Remove all content from the Failing Heads Website, Facebook
>
> page, and Photo Database and cease publishing same, while strictly
>
> preserving such electronic evidence for consideration and use in
>
> further Court proceedings;
>
> (C)    Provide immediately to Trinity all versions of the
>
> "Presentation" referenced on the Website (but currently restricted by
>
> user name and password access), any information submitted
>
> electronically through the Website email addresses (e.g.,
>
> mark@failingheads.com and joshua@failingheads.com), and the
>
> internet protocol ("IP") addresses of any visitors accessing the Failing
>
> Heads Website, Facebook page, and/or Photo Database content
>
> during its existence; and

(D)    Produce and provide to Trinity the name, address, telephone number, IP address, and any other identifying information of any person or entity involved in the registration, creation, updating, or maintenance of the Failing Heads Website, Facebook page, and/or Photo Database; and

7.    All such other relief as this Court deems necessary and proper.

Dated:  January 23, 2013

**LOCKE LORD LLP**

By: /s/ Alexandra M. Dishun
    John H. Williamson
    Georgia Bar No. 765190
    jwilliamson@lockelord.com
    Alexandra M. Dishun
    Georgia Bar No. 184502
    adishun@lockelord.com

    200 Terminus
    3333 Piedmont Rd. N.E.
    Suite 1200
    Atlanta, GA  30305
    404-870-4600
    404-872-5547 (fax)

OF COUNSEL:
**THE LAW OFFICES OF
RUSSELL C. BROWN, P.C.**

Russell C. Brown, Esq.
Texas Bar No. 03167510
P.O. Box 1780
Henderson, Texas 75653-1780
Telephone:  903.657.8553
Fax:  903.655.0218
russell@rcbrownlaw.com

*Counsel for Plaintiffs Trinity Industries, Inc.
and Trinity Highway Products, LLC*